148

United States District Court
E. D. Pennsylvania.
June 3, 1953.

Paul & Paul, Philadelphia, Pa., Hill, Sherman, Meroni, Gross & Simpson, Chicago, Ill., for plaintiff.

Kennard N. Ware, Howson & Howson, Philadelphia, Pa., for defendant.

KIRKPATRICK, Chief Judge.

This is an action for infringement of U. S. Patent 2,042,158 to McKinney, for a door. The commercial embodiment of the claims in suit is a horizontally hung garage door composed of two hinged sections, the door being of the type which opens upwardly and when opened slides back beneath the ceiling of the garage for storage. The claims in suit are 8 and 9. Infringement is admitted and the only issue is patentable novelty.

The main object of the patent is stated as being to provide a sectional door "that can be moved from a vertical plane to a horizontal plane within a smaller clearance space than is required in various types of doors heretofore employed". This saving of space or "head room" is a matter of importance in view of the modern development of small low cost combination house-and-garage buildings.

The essential thing by which the object of the patent is accomplished is a combination of two tracks upon which the door moves by means of rollers attached to its panels. There is a main track which extends vertically upward along the door jamb, then curves and extends horizontally along the side wall under the ceiling. A second, or auxiliary track, is placed above the horizontal part of the main track and parallel to it. The tracks are so disposed that when the door is opened by moving it up the roller attached to the upper panel (called the "lead" roller) moves on the auxiliary track and, as the door is raised, the rollers of the lower panel keep moving along the main track. This combination of an auxiliary with the main track saves space and makes it possible to build the garage with a lower ceiling than if only one main track is used, because the upper edge of the door, moving only on the horizontal auxiliary track, is brought directly into contact with the door-frame without having to move through the arc of the main track.

A considerable amount of patented prior art is cited against the patent. As usual, all of the elements of the patented structure appear in the prior art. None of the prior art patents, however, show the exact combination of the patent in a horizontally hung, sectional door.

If the use of an auxiliary track to accomplish space saving in opening and closing doors had originated with McKinney, a strong argument could be made for patentable novelty. However, at least five prior patents show the use of this device for substantially the same purpose and with the same result. Most of these have to do with doors which are hung vertically and which, when open, are stored along the side of the structure rather than under the top of it. Steuernagel 1,115,345 is an exception and shows the auxiliary track device in connection with a horizontally hung door. It is a single panel door of the type used in sectional bookcases and,

since the bottom of the door has to be pulled outwardly in order to get it moving along the tracks, would not be practical for garages, but the auxiliary track performs the same function as in the McKinney patent and effects a saving of space within the structure.

The Welch patent which has to do with a display cabinet shows a track system very like that of McKinney. The door, however, is vertically hung and consists of a single panel.

Beeman 1,411,561 is a vertically hung sectional door. The track construction is almost exactly that of Claim 8 except that, since the door is suspended from the roof of the garage or hangar, the rollers are of a trolley type moving on a single rail instead of the ordinary kind moving, as they do in the McKinney patent, in a channel iron.

The defendant's expert selected Beeman as disclosing a structure closer to that of McKinney than any of the other prior art patents and I think that his view is correct. In fact, it almost completely anticipates Claim 8 except that it is a hanging vertical door opening sidewise instead of a horizontal door opening upwardly. The question, therefore, is whether invention is involved in taking the Beeman structure and adapting it to a horizontally hung door with overhead storage. The plaintiff argues that the Beeman structure would be inoperative on such a door, in other words, if one should take the Beeman garage and stand it on its side, the door would not work. Of course, he is right about this. However, I see no reason why it could not be made operable by a few very simple adjustments such as would be obvious to anyone of reasonable experience and skill in the art. What had been the lower edge of Beeman's door would have to be supported on a track identical with the track supporting the other edge of the door. The trolley rollers and the trolley track would have to be replaced by rollers and track designed to support the door in its new position. That would be about all.

The plaintiff also argues that Beeman was one of the patents cited by the Patent Office and considered by the examiner before the issuance of the patent, but an examination of the file wrapper indicates that the patent claims were allowed upon an argument based upon slight structural differences which involved no substantial distinctions in the main features of the structure or the principles involved.

I do not regard the adaptation of the structure shown by Beeman to a horizontally hung door as an inventive step. Claim 8 does no more than this and is, therefore, invalid.

Claim 9 is the same as Claim 8 except that it describes the auxiliary track as being angularly deflected at a point above the vertical portion of the main track. The purpose and effect of this feature is to seal the top of the upper panel of the door when the door is closed, so that it will not tilt back and leave an opening, as it might do without some arrangement to keep it shut. It also has the effect of starting the lead roller on a slight curve so that the possibility of finding the door on dead center, when one goes to open it, is avoided. The first of these objects is accomplished fully by similar expedients appearing in the tracks on which the doors of Parnell, British 168,669, and Steuernagel, supra, move. It will be noted that in both of these the direction of the deflection is away from the vertical portion or what corresponds to the vertical portion of the main track, whereas in the plaintiff's drawing it is downwardly toward that point. The plaintiff's claim, however, does not specify the direction of the deflection. The sealing effect, accomplished by a deflection of an auxiliary track, is obviously old and well known, and the camming effect by which the downward deflection in the McKinney patent keeps the door from standing in dead center is the simplest kind of mechanical expedient. Having found Claim 8 invalid, I find nothing in Claim 9 beyond an improvement well within the range of skill of an ordinary experienced designer. Entirely independent of the prior art, it is a simple mechanical expedient after having brought the leading edge of the upper panel against the door-frame to keep it

150

there by allowing the roller to drop into a notch which is, in effect, what the deflection is.

■ "A discovery or devising must add something of significance, though not necessarily very much, to scientific knowledge if it is to take on the quality of invention * * *. When, if ever, can such combination [of old and familiar elements] be said to add to scientific knowledge? The reasonable and accepted answer is if, but only if, the particular combination yields some surprising or extraordinary result." This is the test, as defined by the Court of Appeals for the Third Circuit in Packwood v. Briggs & Stratton Corp., 195 F.2d 971, 973, for determining whether the quality of invention is present. It is an exacting one, and as the Court fully realized, in this modern age there are not many purely mechanical patents consisting of combinations of old elements which will survive it, but it is definitely in line with the standards set by numerous recent decisions of the Supreme Court. Tried by it, the patent now before the Court fails to disclose any inventive concept.

Judgment for the defendant.